**Rafael RODRIGUEZ, Plaintiff,**

v.

**CLOROX DE PUERTO RICO, Defendant.**

**Civil No. 99–1271 (JP).**

United States District Court, D. Puerto Rico.

July 20, 1999.

---

Jose L. Rivero–Vergne, Fernandez, Collins & Rivero–Vergne, Hato Rey, PR, for Plaintiff.

Pedro J. Torres–Diaz, McConnell Valdés, San Juan, PR, for Defendant.

## ORDER

PIERAS, District Judge.

Before the Court is Defendant Clorox de Puerto Rico, Inc.'s ("Clorox") Motion to Dismiss and/or for Stay of Proceedings (**docket No. 8**) and Plaintiff Rafael Rodríguez's ("Rodríguez") Opposition thereto (docket No. 10). For the reasons set forth below Clorox's Motion is hereby **DENIED**.

## I.  BACKGROUND

Prior to filing the Complaint with this Court in the above-captioned case, Plaintiff Rodríguez had filed a complaint in the Puerto Rico Court of First Instance, Caguas Part ("state court") alleging that Clorox, his employer, had dismissed him without just cause in violation of Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, § 185a–1 ("Law 80").  Rodríguez states that after filing the State Court claim, he learned that Clorox's General Manager Jorge Luis Pintos, insisted in discharging him because he was an "aberrated old man."  In view of learning this information, Rodríguez filed charges with the EEOC and the Antidiscrimination Unit.  After obtaining a right to sue letter, on March 17, 1999, Rodríguez filed with this Court the Complaint in the above-captioned case under the Age Discrimination in Employment Act ("ADEA") and Puerto Rico's employment anti-discrimination statute ("Law 100").  In view of the two concurrent proceedings in federal and state court, Clorox filed the Motion at bar arguing that pursuant to the Supreme Court decision in *Colorado River Water Conservation District v. United States,* the Court should dismiss or abstain from exercising its jurisdiction over this case.

## II.  DISCUSSION

The theories of federal abstention have traditionally been premised on principles of state and federal comity or in the avoidance of adjudicating constitutional decisions.  *See East Texas Distributing v. El Gran Video Corp.,* 787 F.Supp. 20, 21–22 (D.Puerto Rico 1991) (Pieras, J.).  In 1976, however, the U.S. Supreme Court established a doctrine governing the stay or dismissal of federal lawsuits to avoid duplicative litigation when concurrent lawsuits involving the same issues are filed in federal and state courts.  *See Colorado River Water Conservation District v.*

*United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). This abstention doctrine, commonly referred to as the *Colorado River* Doctrine, is driven by considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817, 96 S.Ct. 1236 (citing *Kerotest Manufacturing Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 96 L.Ed. 200 (1952)). Federal courts, however, have an obligation to exercise the jurisdiction bestowed upon them by the Constitution and Congress, and therefore, surrendering jurisdiction under the *Colorado River* doctrine is allowed only in exceptional circumstances. *See Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 947 F.2d 529, 532 (1st Cir.1991).

■ In *Colorado River,* the Supreme Court listed four factors that federal courts should weigh in determining whether or not to abstain to prevent duplicative litigation in state and federal courts. The factors are: (i) whether a *res* is involved in the litigation and another court has already exercised jurisdiction over it; (ii) whether the federal forum is inconvenient; (iii) whether staying or dismissing the suit would avoid piecemeal litigation; and (iv) whether jurisdiction was obtained in the state forum first. *See Colorado River Water Conservation District,* 424 U.S. at 818–19, 96 S.Ct. 1236. In 1982, the Supreme Court added two more factors to the mix, to wit: (v) whether state or federal law controls the action; and (vi) whether the state forum will adequately protect the interests of the parties. *See Moses H. Cone v. Mercury Construction Corp.,* 460 U.S. 1, 25–26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The First Circuit Court of Appeals notes, however, that the *Colorado River/Moses H. Cone* standard suggests that " 'there will be rare cases in which "exceptional circumstances" will exist justifying stay or dismissal because of a concurrent state proceeding.' " *Gonzalez v. Cruz,* 926 F.2d 1, 3 (1st Cir.1991) (citing to

17A Charles A. Wright, Arthur R. Miller and Edward H. Cooper, FEDERAL PRACTICE & PROCEDURE § 4247, 150–54).

The parties and the Court agree that the first two factors are irrelevant in this discussion because there is no *res* involved in this Complaint and further, the federal forum, in San Juan, Puerto Rico, is no less convenient for the parties than the state court, which is located in the nearby city of Caguas. Therefore, the Court shall limit its discussion to the rest of the *Colorado River/Moses H. Cone* factors.

■ In determining whether abstaining will prevent piecemeal litigation between the state and federal courts, the Court considers the implications and practical effects of suits based on the same facts in two separate fora. *See Gonzalez v. Cruz,* 926 F.2d at 4. Clorox argues that the circumstances surrounding the state and federal proceedings are a "classic example of piecemeal litigation that courts . . . should avoid" because the state and federal complaints arise from the same facts and ultimately will decide the same issue, namely, the legality of Plaintiff's dismissal. (Def's Mot. Dismiss Stay Proceedings at ¶ 9). Clorox cites the recently decided case of *North American Boxing Organization Intercontinental, Inc. v. North American Boxing Organization, Inc.,* 40 F.Supp.2d 55 (D.Puerto Rico 1999), for the proposition that even if the federal and state actions are brought under different statutes, when there are identical issues in both proceedings, the Court should find that piecemeal litigation would ensue. The Court disagrees with Clorox's interpretation regarding the applicability of *North American Boxing* to the case at bar because the issues in the state and federal proceedings are different.

First, Plaintiff's case in State Court is governed by a summary procedure created under Law No. 2 of 1961, P.R. Laws Ann. tit. 32, § 3118 ("Law 2"). Law 2 pursues a fast, fair and economically efficient adjudication of labor claims. *See Rivera Rivera v. Insular Wire Products Corp.,* 96 JTS 76.

In *Rivera Rivera*, the Puerto Rico Supreme Court articulated the scope of the summary procedure of Law 2, noting that, although unjust dismissal under Law 80 and employment discrimination claims under Law 100 may be adjudicated by Law 2 procedures, a state court may remove claims under Law 100 from the fast track of Law 2 if these present more complex questions. In an ADEA claim, a factfinder must assess issues such as motivation and discriminatory animus. This inquiry into a defendant's state of mind is inconsistent with the interests of quick and efficient adjudication present in Law 2. Therefore, the matters considered in the state court proceeding are different from those in the action at bar.

Second, in his state court complaint, Plaintiff is not alleging age discrimination, but rather the unjust discharge from his job. Under Law 80, the Puerto Rico statute which governs unjust discharges, good cause for discharge is considered to be: (a) an employee's pattern of improper or disorderly conduct; (b) his attitude of not performing his work in an efficient manner or of doing it belatedly and negligently; (c) his repeated violations of reasonable rules and regulations; (d) the closing of the establishment's operations; (e) technological or reorganization changes and changes of style, design or nature of the product being made or handled; or (f) reductions in employment made necessary by a reduction in production, sales or profits. *See* P.R. Laws Ann. tit. 29, § 185b. That is to say, these are the causes for which an employee may be discharged in Puerto Rico. Although age is certainly not a good cause for discharging an employee, the ADEA addresses a specific type of adverse employment action, age. Therefore, the scope of the ADEA and Law 80 and the issues posed under these statutes are different because whereas a proceeding under the former statute will consider whether Plaintiff was discharged because of his age, a proceeding under the latter will consider whether or not an employee was discharged for the causes listed above.

For this reason, the overlap between the state and federal case is nonexistent, or at best, very limited.

Third, Plaintiff learned of the alleged age-based reasons for his discharge after he filed the state complaint. Therefore, his state claims should be premised on allegations other than age. In sum, although the legality of Plaintiff's dismissal is involved in both cases, the scope of the federal claim is different from the state claim because the former will look at whether age played a factor in Plaintiff's dismissal, whereas the latter will look at dismissal under the scope of Law 80. In conclusion, the factor of avoiding piecemeal litigation weighs in favor of not abstaining.

The next factor, the order in which jurisdiction was obtained, must be weighed along with the motivation of Plaintiff in filing the second suit. *See Gonzalez v. Cruz*, 926 F.2d at 4. The events leading up to the filing in federal court do not reflect any vexatiousness or reaction on behalf of Plaintiff to any event or ruling in the state court procedure. Rather, Plaintiff learned of the alleged expressions made by Jorge Luis Pintos that he was an "aberrated old man" after the state complaint. Therefore, it does not appear that the federal complaint resulted from an unfavorable ruling of the state court. *See id.* This consideration also weighs in favor of not abstaining.

■ Finally, the Court determines whether state or federal law is controlling in the instant case and the adequacy of the state court in adjudicating. There are issues of state and federal law in the instant Complaint under Law 100, which is the Puerto Rico anti-discrimination statute, and ADEA. The Court notes that the presence of a federal cause of action must constitute a major consideration against surrendering its jurisdiction and that the presence of a state claim does not necessarily tilt the scales in favor of dismissal. *See Moses H. Cone*, 460 U.S. at 26, 103 S.Ct. 927; *Villa Marina*, 915 F.2d at 15.

Therefore, the two factors added by the *Moses H. Cone* decision are also in favor of not surrendering jurisdiction.

In view that the *Colorado River/Moses H. Cone* factors do not tilt the scales in favor of abstention, the Court hereby **DENIES** Clorox's Motion to Dismiss and/or Stay of Proceedings.

**SO ORDERED.**